**COLUMBUS (City), Plaintiff-Appellee, v. HOLMES, Defendant-Appellant.**

Ohio Appeals, Tenth District, Franklin County.

No. 5878. Decided May 27, 1958.

Russell Leach, City Atty., Bernard T. Chupka, City Pros., Columbus for plaintiff-appellee.

L. P. Henderson, L. M. Gwynn, Columbus, for defendant-appellant.

## OPINION

By BRYANT, J.

This is an appeal in a criminal case. Julia Holmes, 504 South Grant Avenue, Columbus, Ohio was arrested on July 21, 1955. Upon a charge of disorderly conduct, she was found not guilty by the court sitting as jury. Upon the charge that she "did unlawfully, knowingly and willfully resist and obstruct in the execution of his office one J. Cameron then and there being an officer of said city, to-wit, a Police Officer on the Police force of said City of Columbus, by violently resisting, trying to break away from officer's grasp . . . . That said Police Officer as aforesaid, at the time he was so resisted and obstructed as aforesaid, being then and there in the execution and discharge of his duty as such officer as aforesaid, which she, the said Julia Holmes then and there well knew, contrary to the ordinance * * *," she was found guilty.

The court sentenced her to thirty days imprisonment in the Columbus Workhouse and fined her $25 and costs. The imprisonment was suspended upon condition of good behavior. Mrs. Holmes, defendant-appellant herein, appealed to the Common Pleas Court of Franklin County, which sustained the judgment of the Columbus Municipal Court, and she has appealed the latter decision to this court.

The notice of appeal filed in the Common Pleas Court states that "said appeal is on questions of law and on questions of law and fact." In as much as no appeal on questions of law and fact is permissible in this type of case, the appeal will be considered as being on questions of law only. That apparently is the way the defendant-appellant has considered it for she has filed an assignment of errors containing four alleged prejudicial errors claimed to have affected her substantial rights in this case.

The principal, if not the sole question, to be decided in this case is the legality of the arrest of defendant-appellant, Julia Holmes.

The trial court found that the defendant was not guilty of disorderly conduct from which it would seem to follow that the officer should not have arrested her. Said court then held that whether or not there was any ground whatsoever on which the officer acted in making the arrest, she had no right to object. At page 59 of the Bill of Exceptions the court stated:

"This charge of disorderly conduct does not stand up beyond a reasonable doubt, but the other mistake was in not obeying the officer, even if he was incorrect in making his arrest. That doesn't affect the validity of the arrest. We're talking about two entirely separate and distinct things here. She did interfer (interfere); there can be no reasonable doubt in anybody's mind."

Mrs. Holmes at and prior to the time of the arrest in question was a music teacher, teaching piano and voice. She was also a seamstress and appears to have rented out rooms to tenants in the place where she resided with her family. One of the roomers for a period of about three months was H. H. Huff, a man who appears not to have been able to drive a car and who desired someone to act as his chauffeur. It was the claim of Mrs. Holmes that in consideration of her services as driver and making available transportation service whenever desired. that the said Huff gave her an automobile. It appears not to be in dispute that she had full possession and control of the car, that she was possessed of the keys, that the certificate of title was in her possession and that in all respects for an indefinite period of time she exercised all the rights of an owner of the said vehicle.

Huff did not testify and his part in this transaction can only be learned by what others testified. It would appear that he had changed his mind about the bargain, had moved out of Mrs. Holmes' place and wanted his car back. It also appears that Mrs. Holmes told him he couldn't have it back.

At this point in the proceeding it would appear that there might well have been the basis for an action in replevin in favor of Huff. Sec. 2737.01 R. C., dealing with this subject, provides as follows:

"The possession of specific personal property may be recovered in an action as provided in §§2737.01 to 2737.24, inclusive, R. C."

This is because of the provisions of §4505.04 R. C., which states simply that the title to a motor vehicle does not pass until a certificate of title is issued to the one claiming to be the new owner. As it subsequently developed the title was still in the name of Mr. Huff although Mrs. Holmes claimed that he had given the certificate of title to her and promised to take all steps necessary to have a new title issued in her name.

Huff appears to have called the office of the inspector of the Columbus Police Department and to have given information that a police officer was neded at 504 South Grant Avenue, the home of Julia Holmes, and an officer, John Cameron, was dispatched to the place as he stated (Bill of Exceptions, p. 3, Q. 8):

"* * * to settle a complaint that had been lodged through the inspector's office."

Cameron was accompanied by an acquaintance of his, Robert C. Crane, a firefighter for the City of Columbus, who went along to assist, if needed.

All parties to the transaction appear to agree that at the time the police officer arrived at 504 South Grant Avenue, peace and tranquility reigned everywhere. Mrs. Holmes was inside her home with the door closed sewing some clothing for her son. The officer rapped on the door and asked if she had called for the police and she replied in the negative.

At this point, Huff, who had been some distance down the street, appeared and told the officer he had called the police and that Mrs. Holmes had property belonging to him. Mrs. Holmes denied this and stated the circumstances and considerations under which she came into possession of the car as a gift from Huff evidenced by the fact that not

only was the car given to her custody but also the keys and all of the papers including the certificate of title.

Mrs. Holmes said that because of the presence of an officer in uniform she invited him in and exhibited to him the certificate of title, which was still in the name of Huff.

As stated before, Huff might well have resorted to replevin because of the provision of the certificate of title law above referred to. However, even the provisions of said §4505.04 R. C., are not absolute in all cases as recognized by the Supreme Court of Ohio in holding that evidence establishing fraud is admissible where it would have the effect to cause such certificate to be voidable. See **In re Estate of Case: Butler v. Case, Admr., et al., 161 Oh St 288**, the second branch of the syllabus is as follows:

"Sec. 6290-4 GC (§4505.04 R. C.), makes evidence inadmissible to dispute the title of one to whom a motor vehicle certificate of title is issued pursuant to the provisions of the Ohio Certificate of Title Act **except evidence to establish fraud which would cause such certificate of title to be voidable.**" (Emphasis added.)

See also **Ohio Casualty Ins. Co. v. Guterman, 97 Oh St 237**, decided by the Court of Appeals of Montgomery County, Ohio in which the syllabus is as follows:

"The holder of a valid certificate of title to an automobile issued in another state may maintain an action in replevin in Ohio against a subsequent purchaser who holds an Ohio certificate of title which is derived through a person who stole the automobile from the rightful owner."

See also **In re Robert E. Lee, Inc., Bankrupt, 57 O. O. 304.**

It would appear that the police officer was not inside the house very long, Crane, the firefighter, estimating the time at "two or three minutes." During that time, the officer decided then and there that Mrs. Holmes had no right or title to the car, no right to possess or use it and that she must immediately surrender the car, the title and the keys to Huff, that she had no right to appeal to anyone and that unless there was instantaneous and complete compliance with this order and mandate of the officer, she would be guilty of disorderly conduct and would be immediately arrested and taken to the City Jail.

As before stated the trial court appears to have found that this was entirely proper and in accordance with law and that Mrs. Holmes was completely in the wrong in attempting to defend the property she claimed, as belonging to her, and that under the circumstances the correctness or incorrectness of the arrest made no difference.

Apparently the Common Pleas Court agreed with the Municipal Court for at the end of his decision there appears this statement:

"It is unfortunate that the situation got out of hand. The defendant, however, had no right to resist the officer in discharging what he honestly felt was his official duty."

From what has been said above it would appear that only good faith is required of an officer and no matter how grievous his error may be or how completely unauthorized his act, the citizen has no right to

defend his property but must meekly comply. We do not conceive that to be the law applicable to this case.

In the Code of Criminal Procedure (§2935.01 et seq, **R. C.**) an entire chapter (**Chapter 2935 R. C.**), is devoted to "detection and arrest." From the language of the sections in that chapter may be learned the precise powers granted to peace officers charged with the duty of enforcing penal laws and ordinances. Important here is the distinction between felonies and misdemeanors as set forth in **§1.06 R. C.**, which reads as follows:

"Offenses which may be punished by death or by imprisonment in the penitentiary are felonies: all other offenses are misdemeanors. As used in the Revised Code 'minor offense' is synonymous with misdemeanor."

Also important is the distinction between violations of law or ordinances taking place in the presence of a peace officer and those which do not take place in his presence.

By express provision of statutes, peace officers generally are authorized to arrest and detain persons violating a law or ordinance in the presence of the officer without first filing an affidavit and obtaining a warrant to arrest and this applies equally to misdemeanors or felonies taking place in the presence of the said officer. **Sec. 2935.03 R. C.,** provides in part as follows:

"A sheriff, deputy sheriff, marshal, deputy marshal, watchman, or police officer shall arrest and detain a person **found violating a law of this state, or an ordinance of a municipal corporation,** until a warrant can be obtained." (Emphasis added.)

We are not here concerned with a felony. Both of the charges filed by the officer were ordinance violations and, hence, misdemeanors. We note in passing, however, that where a felony has been committed or there is a reasonable ground to believe that a felony has been committed, peace officers and private citizens alike, without a warrant, may arrest a person where there is reasonable cause to believe he is guilty of the offense.

No affidavit had been filed and no warrant to arrest had been issued at the time Mrs. Holmes was arrested. It is, of course, apparent that whatever commotion occurred, took place after the officer attempted forcibly to transfer possession of the certificate of title, the car keys and the car itself from Mrs. Holmes to Mr. Huff. It is not disputed in the record that these articles of personal property came voluntarily into the possession of Mrs. Holmes apparently by the act of Mr. Huff.

It may well be that Huff would have prevailed in an action in replevin, but we have been unable to find any authority given by law to the officer in this case to settle a private dispute over the right to possession of personal property as was done here and it follows that the threat to arrest for failure to comply was without legal foundation.

The question remains whether Mrs. Holmes was entitled to refuse to comply and to resist attempts forcibly to make her comply under these circumstances. We hold that she was.

In 6 Corpus Juris Secundum 588, Section 6, Arrest, the rules relating to arrests for misdemeanors **not occurring in the presence of the arresting**

**officer** are discussed and it is stated generally that only in felony cases may such arrests be made without a warrant. This authority states the rule as follows:

"In any case, however, in order that an officer may be justified in making an arrest without a warrant for an offense not committed in his presence, but merely on suspicion of a crime committed, the crime must be at least technically a felony, either by common-law or by statute, and the officer making the arrest must have reasonable grounds for believing that the person arrested committed it."

It would thus appear that §4505.04 et seq, R. C., being a part of the Ohio Code of Criminal Procedure, incorporates into Ohio law the general rule throughout the Country. The same authority further states that a mere suspicion or belief that a misdemeanor has been committed will not authorize an arrest without a warrant. At page 594 of the said text it is stated:

"It is the general rule, subject to statutory variations, that a misdemeanor must have been actually committed to justify an arrest without a warrant, and the mere belief or suspicion that a misdemeanor is being, or has been, committed is insufficient to warrant an arrest without a warrant; nor may an arrest without a warrant be made on a belief, founded on information received from a third person, that a misdemeanor is being committed."

In 5 O. Jur. (2d) 33 and 34, Section 21, Arrest, it is stated:

"No person except an officer has a right to make an arrest for a misdemeanor without a warrant. **An officer can arrest a person for the commission of a misdemeanor or violation of a city ordinance without a warrant only if he sees the person commit the misdemeanor or violate the ordinance.** Thus an arrest without a warrant, after the completion of a minor offense not committed in the presence of the officer, is illegal. If an officer is absent when a misdemeanor is committed, and all the information he has of the offense is from statements of bystanders who witnessed it, he has no authority to pursue and arrest the person charged with the offense, without first obtaining a warrant." (Emphasis added.)

We think it is clear, therefore, that there was no misdemeanor committed in the presence of the officer and there being no warrant, there was no authority to make the arrest.

What of the resistance to the arrest? The authorities are in agreement that since the right of personal property is one of the fundamental rights guaranteed by the Constitution, any unlawful interference with it may be resisted and every person has a right to resist an unlawful arrest. In 5 O. Jur. (2d) 61, Section 52, Arrest, it is stated:

"**Since the right of personal property is one of the fundamental rights guaranteed to every citizen, and any unlawful interference with it may be resisted, every person has a right to resist an unlawful arrest; and, in preventing such illegal restraint of his liberty, he may use such force as may be necessary.**" (Emphasis added.)

This appears also to be the general rule throughout the United States. In 4 Am. Jur. 63, Section 92, Arrest, there appears the following statement:

"**The right of personal liberty is one of the fundamental rights**

guaranteed to every citizen, and any unlawful interference with it may be resisted. Every person has a right to resist an unlawful arrest; and, in preventing such illegal restraint of his liberty, he may use such force as may be necessary." (Emphasis added.)

It is quite clear that Mrs. Holmes, believing she was right, attempted to protect what she claimed was her property from the summary disposition and transfer attempted by the officer in this case. Mrs. Holmes claimed the officer used foul names with reference to her (Record, p. 48) and the officer admitted referring to her as "a bitch." At page six of the record the officer, on cross-examination, gave this testimony:

"Q12. Officer, what did you say you said? Help me do what? A. I said to the fireman who was standing there trying to help me—I handed him my handcuffs, and I says, Put the cuffs on this bitch." .

Mrs. Holmes told of going outside her house and entering the automobile in question to obtain her personal belongings in the glove compartment. She testified she was ordered to get out of the car by the officer and that she complied, but was told she was under arrest. Her description of the scuffle follows (Record, P. 48):

"He said, March yourself over there and get in my car. So I walks over to the car. And just as I go to go in, he jumps on my back and bends me over. Well, the onliest way I could do, I did strugle around his leg because he almost had my breath. I couldn't say anything. I struggled around his leg and tried to hold myself up. Finally I felt this cement on the corner, and I held that as long as I could. And then he said, Put handcuffs on this—you know, called me a foul name. So after he did that, I kind of made a quick little jerks to get his hand out from under my neck. And when I did that, I made a step to go to the house. When I did that, he grabbed me by this leg and he tripped me over on the cement steps at the door, and then he dragged me and turned me all over. And I kept trying to go in the house, and I was going to call for help. I said, I'm going to call for help myself. I couldn't do anything. He wouldn't let me do nothing hisself. So the people had yelled around there—the neighbors, and beings they was rooming there with me, they pleaded with him to turn me loose. They said, You have no business manhandling a lady like that. They said, She wasn't bothering you. They said, She was sitting here tending to her business. You don't have any affidavit to arrest her."

On behalf of defendant-appellant, the errors claimed are that the judgment is against the manifest weight of the evidence, is not sustained or supported by the evidence, is contrary to law and contrary to the law and evidence.

In our opinion, for the reasons above set forth, the judgments of the Court of Common Pleas of Franklin County and the Columbus Municipal Court contain errors prejudicial to the defendant-appellant and are against and not sustained by the manifest weight of the evidence and are contrary to law and will, therefore, be reversed and set aside and the case is remanded to the Municipal Court for further proceedings in accordance with law.

PETREE, PJ, MILLER, J, concur.